IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,<br><br>                 Plaintiff,<br><br>  vs.<br><br>ALASKA GOLDMINE LLC; and SHELDON MAIER,<br><br>                 Defendants. | Case No. 4:23-cv-00019-JMK<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

Pending before the Court at Docket 3 is Plaintiff's Motion for Preliminary Injunction. Plaintiff sought expedited consideration at Docket 5. The Court granted Plaintiff's Motion for Expedited Consideration and set responsive deadlines accordingly.[1] Defendants responded at Dockets 9–11. Plaintiff replied at Docket 12. Defendants filed an unsolicited answer at Docket 15. For the following reasons, Plaintiff's Motion for Preliminary Injunction is **GRANTED**.

---

[1] Docket 6 (text entry).

## I. BACKGROUND

Defendant Sheldon Maier, and his wife Janne,[2] operate an above-ground gold mine under the corporate moniker Alaska Goldmine LLC ("Alaska Goldmine"), also a named Defendant in this action.[3] The mining operation is located at mile marker 16 of the Steese Highway, near Fairbanks, Alaska.[4] Plaintiff refers to this mining operation as "the Pedro Creek Mine; whereas, Defendants refer to it as "One Above Discovery."[5] For clarity, the Court will refer to this mine as Pedro Creek.

On August 24, 2022, the Mine Safety and Health Administration ("MSHA") attempted to perform an inspection of the Pedro Creek site after receiving an anonymous complaint alleging an illegal mine operation.[6] MSHA Inspector Towne made contact with Defendant Maier, presented his credentials, and informed Maier of his intent to perform an inspection per Section 103 of the Mine Act, 30 U.S.C. § 813(a).[7] Defendant Maier denied MSHA access to the site to inspect the mining operation.[8] Plaintiffs allege that subsequent observations of the site from the highway showed mining equipment moving.[9]

On September 13, 2022, MSHA Inspectors Towne and Berberich attempted to inspect the mining operation, this time accessing the site via helicopter.[10] Plaintiff alleges that upon landing, the MSHA Inspectors observed several pieces of mining

---

[2] Docket 9 at 13.
[3] Docket 1 at 2.
[4] Docket 3-1 at ¶ 3.
[5] Docket 3 at 2; Docket 9 at 13.
[6] Docket 3-1 at ¶¶ 4–6.
[7] *Id.* at ¶ 5.
[8] *Id.* at ¶ 6.
[9] *Id.* at ¶ 7; Docket 1 at 4.
[10] Docket 1 at 4; Docket 3-1 at ¶ 7.

*Su v. Alaska Goldmine, et al.*  Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction  Page 2
Case 4:23-cv-00019-JMK   Document 16   Filed 11/01/23   Page 2 of 20

equipment, including a trommel (which, based on Inspector Towne's experience is only used for gold mining), and a "fresh cut" in the earth.[11] Based on their plain view, MSHA Inspectors made the determination that the Pedro Creek site was a gold mining operation.[12] Allegedly, upon Defendant Maier's arrival, Inspector Berberich asked Defendant Maier if he was willing to register the mine with MSHA per Section 109(d) of the Mine Act.[13] Plaintiffs further allege that Defendant Maier asserted that MSHA lacked authority to inspect, denied entry to the site, and the MSHA Inspectors departed.[14]

Subsequently, on that same day, MSHA issued seventeen citations to Defendant Alaska Goldmine. The citations related to the alleged hazards caused by:

> four damaged windows on dozer obstructing the driver's view; no berms on the mine's roadways; an unguarded drive chain and drive sprocket; an unguarded drive belt, pulley and fan blades; an unguarded tail pulley; a unsloped highwall containing loose and overhanging material; unguarded belt rollers; a lack of flotation devices next to water hazards; a van used to jump start water pumps parked on a down grade; a 120 volt control box missing knockouts; an unguarded drive belt and fan blades; no traffic signage; no first aid supplies . . . lack of a training plan, failing to notify MSHA of a new mining operation, failing to notify MSHA upon commencing operations, and denying MSHA entry to the mine for purpose of conducting an inspection.[15]

---

[11] Docket 1 at 4–5.
[12] *Id.*
[13] *Id.* at 5.
[14] *Id.*
[15] *Id.*

*Su v. Alaska Goldmine, et al.* Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction Page 3
Case 4:23-cv-00019-JMK Document 16 Filed 11/01/23 Page 3 of 20

On September 13, 2022, MSHA issued a citation/order number 9615288 ("MSHA Order") which directed Defendant Alaska Goldmine "withdraw all the miners until the miners have received the required training."[16]

On June 16, 2023, Inspector Towne returned to Pedro Creek Mine, observed moving mining equipment, and attempted to serve fourteen failure to abate orders under Section 104(b).[17] Inspector Towne attached the orders to the gate lock and later that day observed that the orders were no longer attached to the gate.[18] Plaintiff alleges that "[d]espite phone calls, UPS mailing, and visits to the mine, Defendant Maier refused to respond to MSHA or provide evidence that the cited hazards had been abated."[19]

Plaintiff alleges that Defendants are aware of the citations as evidenced by an interview posted on April 6, 2023 on the "The Michael Dukes Show" YouTube Channel titled "Thursday 4/6/2023 – Session & Mining: Rep McCabe & Sheldon Maier."[20] Plaintiff alleges that during June and July 2023, the Department of Labor left messages requesting to speak to Defendant Maier; who responded by letter that Alaska Goldmine has never authorized inspectors to be on site and would continue to refuse MSHA inspections.[21]

---

[16] Docket 3-1 at 8.
[17] Docket 1 at 5.
[18] *Id.*
[19] *Id.* at 5–6.
[20] Docket 3-1 at ¶ 13.
[21] Docket 1 at 6.

On September 6, 2023, Plaintiff filed a Complaint for Injunctive Relief and a Motion for Preliminary Injunction.[22] The Complaint alleges that:

> Defendants have (1) refused to admit the authorized representatives of the Acting Secretary onto, and to permit the inspection of, a mine site, in violation of Section 103(a), 30 U.S.C. § 813(a); (2) interfered with, hindered, and refused to permit the Acting Secretary's representatives from carrying out the provisions of the Mine Act, in violation of Section 103(a), 30 U.S.C. § 813(a); (3) and refused to comply with Order No. 9615288, in violation of Section 104(g)(1), 30 U.S.C. § 814(g)(1).[23]

In the Complaint, Plaintiff requests the Court enjoin Defendants, agents, and employees from (1) denying representatives of MSHA or the Department of Labor entry to Pedro Creek; (2) refusing inspection of the mine and any equipment; (3) interfering, hindering, or delaying representatives from carrying out provisions of the Mine Act; and (4) refusing to comply with Order of Withdrawal No. 9615288, per Section 104(g)(1).[24]

Plaintiff's Motion for Preliminary Injunction, made pursuant to Federal Rule of Civil Procedure 65, re-summarizes MSHA's alleged attempts to inspect the Pedro Creek Mine and Defendants' refusal to comply.[25] Plaintiff requests the Court enjoin Defendants "from denying MSHA entry into the Pedro Creek Mine and from allowing any miners onto the mine site until such miners have received training required under the Federal Mine Safety and Health Act."[26] Plaintiff argues that a preliminary injunction is necessary in

---

[22] Dockets 1, 3.
[23] Docket 1 at 6.
[24] *Id.* at 7.
[25] Docket 3 at 2–3.
[26] *Id.* at 7–8.

*Su v. Alaska Goldmine, et al.*                                                                                            Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction                                                                          Page 5
Case 4:23-cv-00019-JMK    Document 16    Filed 11/01/23    Page 5 of 20

order for MSHA to (1) "comply with their Congressional mandate to complete bi-annual inspections of surface mines";[27] and (2) "enjoin Defendants from harassing, intimidating, and threatening MSHA inspectors assigned to inspect the mine."[28] On September 8, 2023, Plaintiff filed a Motion to Expedite Consideration of its Motion for Preliminary Injunction, which the Court granted on September 11, 2023.[29] The Alaskan above-ground mining season closes approximately October 31, 2023.[30]

On September 25, 2023, Defendants filed a joint Answer to the Complaint and response to the Motion for Preliminary Injunction, along with a Motion to Deny Expedited Consideration.[31] In brief summary, Defendants answer that: Plaintiff's motion violates their Fourth Amendment right to be free from unreasonable search and seizure;[32] MSHA Inspectors repeatedly failed to provide their names, made threats against Defendants, and trespassed.[33] Defendants also deny that they harassed, intimidated, or threatened MSHA Inspectors by refusing inspection or by filming inspectors.[34]

Addressing the Motion for Preliminary Injunction, Defendants assert that Defendant Maier's media appearances are protected by the First Amendment; Defendants maintain a "right to refuse communication from MSHA when MSHA has shown no habeas corpus for their original claim of an 'anonymous complaint'"; and they have communicated

---

[27] *Id.* at 3.
[28] *Id.* at 8.
[29] Dockets 5, 6 (text entry).
[30] Docket 3 at 3.
[31] Dockets 9, 11.
[32] Docket 9 at 1.
[33] *Id.* at 3.
[34] *Id.* at 5.

*Su v. Alaska Goldmine, et al.* Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction Page 6
Case 4:23-cv-00019-JMK   Document 16   Filed 11/01/23   Page 6 of 20

through to MSHA through Senator Sullivan's Office and the Office of Inspector General.[35] Defendants argue that "[g]ranting this injunction would also cause irreparable harm because it would allow violations of 4th [A]mendment rights and harassment and coercion under color of law" . . . and "harm the very foundation of our nation and compromise the integrity of federal employees everywhere."[36] Defendants assert that MSHA's citations are the result of an illegal inspection and designed to punish Defendants.[37]

On September 28, 2023, Plaintiff replied with four arguments.[38] First, Plaintiff requests the Court strike the response as to Alaska Goldmine, because as a self-represented litigant, Defendant Maier, may not represent or file on behalf of Alaska Goldmine LLC.[39] Second, Plaintiff argues that Defendants' response does not refute any of the factual basis that would alleviate application of the Mine Act or the need for injunctive relief.[40] Third, Plaintiff argues that Defendants fail to address the framework of the Mine Act and the reliance on *Marshall v. Wait*, 628 F.2d 1255 (9th Cir. 1980), is inapposite.[41] Lastly, Plaintiff asserts that the anonymous complaint is not that "of a whistleblower making specific safety complaints," but rather "information of a mine operating illegally, in that it was unregistered and not being inspected per the Mine Act requirements."[42]

---

[35] *Id.* at 4–5, 9–14.
[36] *Id.* at 5.
[37] *Id.*
[38] Docket 12.
[39] *Id.* at 3.
[40] *Id.* at 4–6.
[41] *Id.* at 6–8.
[42] *Id.* at 8.

On October 17, 2023, Defendant Maier filed an "Answer to Declaration of Acting Secretary's Reply to Defendant's Response to Motion for Preliminary Injunction."[43] In brief summary, Defendant Maier addresses recent correspondence from MSHA summarizing the "anonymous complaint."[44] Defendants contend that a complaint from a "slighted neighbor" "is not a safety complaint."[45] This neither is a motion nor an authorized filings under the Local or Federal Rules of Civil Procedure.[46]

The Court takes judicial notice that Sheldon and Janne Maier filed a Complaint for Violation of Civil Rights in *Maier, et al. v. Jones, et al.*; Case No. 4:23-cv-00021-SLG, which names four alleged MSHA inspectors as defendants.[47] Sheldon and Janne Meier initiated that civil case five days prior to submitting their Answer and response in this action.

## II. RESOLUTION OF THRESHOLD ISSUES

The Court must address the following threshold issues before analyzing Plaintiff's request for a preliminary injunction: First, the Court will address the attempted *pro se* representation of Alaska Goldmine LLC. Second, the Court will address the

---

[43] Docket 15.
[44] *Id.* at 1–2.
[45] *Id.* at 1.
[46] While the Court may liberally construe pleadings from self-represented litigants and act with leniency for procedural violations, self-represented litigants remain bound by the same procedural rules. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012).
[47] Judicial notice is the "court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." *Judicial Notice, Black's Law Dictionary* (11th ed. 2019); Fed. R. Evid. 201(b); *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (internal quotations and citations omitted) ("Materials from a proceeding in another tribunal are appropriate for judicial notice.").

*Su v. Alaska Goldmine, et al.* Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction Page 8
Case 4:23-cv-00019-JMK   Document 16   Filed 11/01/23   Page 8 of 20

functions of the Mine Act regarding owner-operators and employees, the legality of regulatory inspections, and the exhaustion of administrative remedies.

A.   **Alaska Goldmine LLC Must be Represented by Counsel of Record**

The Answer and Response at Docket 9 attempts to represent both Defendant Maier and Defendant Alaska Goldmine.  Plaintiff argues in its reply that "Alaska Goldmine LLC has not complied with the requirements that it be represented through an attorney in this matter."[48]  Plaintiff argues that Defendants' responsive pleadings should be stricken as they relate to Alaska Goldmine LLC.[49]

The Ninth Circuit Court of Appeals requires that an individual may only represent their own interests.[50]  Self-represented litigants may not represent associations, corporations, partnerships, or shareholders.[51]  "A corporation may appear in federal court only through licensed counsel."[52]  Defendants have not retained counsel and are appearing on their own behalf.[53]  Because Defendant Maier cannot respond on behalf of Alaska Goldmine LLC, the responses received at Dockets 9, 10, and 11 will not apply to Alaska Goldmine LLC.  Defendant Alaska Goldmine LLC must retain counsel in order to properly appear before the Court.

---

[48] Docket 12 at 3.
[49] *Id.*
[50] See *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997); *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697–98 (9th Cir. 1987).
[51] See *Church of the New Testament v. United States*, 783 F.2d 771, 773 (9th Cir. 1986) (unincorporated associations); *In re Highley*, 459 F.2d 554, 555 (9th Cir. 1972) (corporations); see *In re Am. West Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994) (per curium) (partner); *United States v. High Country Broad. Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curium) (shareholder).
[52] *High Country Broad. Co.*, 3 F.3d at 1245.
[53] Docket 11 at 1.

*Su v. Alaska Goldmine, et al.*                                                                                           Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction                                                                                                         Page 9
Case 4:23-cv-00019-JMK   Document 16   Filed 11/01/23   Page 9 of 20

## B. The Federal Mine Safety and Health Act, 30 U.S.C. § 801 *et seq.*

In 1977, Congress passed the Federal Mine Safety and Health Act ("the Mine Act").[54] The sole purpose of this comprehensive legislative scheme is to "ensure the safety of miners."[55]

### (1) The Mine Act applies to Defendants' mining operation

Defendants argue that the Mine Act does not apply because Defendants do not have any employees.[56] When Congress passed the Mine Act, it used broad language: "[e]ach coal or other mine, the products of which enter commerce, or the operations or products of which affect commerce, and each operator of such mine, and every miner in such mine shall be subject to the provisions of this chapter."[57] Title 30 United States Code, section 802(d) defines an operator as "any owner, lessee, or other person who operates, controls, or supervises a coal or other mine or any independent contractor performing services or construction at such mine." Similarly, 30 U.S.C. § 802(g) defines a miner as "any individual working in a coal or other mine." These terms apply and control the regulation of mining activities regardless of an operator's or miner's familial association.[58]

Defendants do not dispute that they are engaged in a mining operation, which MSHA sought to inspect at the "mine site."[59] Defendants' mining operation appears to

---

[54] Pub. L. No. 91-173, *as amended by* Pub. L. No. 95-164.
[55] *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (quoting *Cumberland River Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 712 F.3d 311, 317 (6th Cir. 2013)).
[56] Docket 9 at 14 ("We ask that the Inspector General direct MSHA to operate within their mandate to protect employees, and to cease and desist wasting public funds to harass owner operator mine sites.").
[57] 30 U.S.C. § 803.
[58] *Marshall v. Kraynak*, 604 F.2d 231, 232 (3rd Cir. 1979).
[59] Docket 9 at 1; Docket 10 at 1.

*Su v. Alaska Goldmine, et al.* Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction Page 10
Case 4:23-cv-00019-JMK   Document 16   Filed 11/01/23   Page 10 of 20

engage in commerce, either through the production of gold or other saleable materials, as evidenced by Defendants' declared "$50,000 in lost production time."[60] Though the record before the Court is sparse as to Defendants' activities, prior precedent guides that both intrastate and interstate sales of mined materials constitute products that enter or affect commerce.[61] According to the plain language of the statute, when a mine affects commerce, the *operator* and any miners are subject to the Mine Act. Defendants' argument that they are exempt from the Mine Act because Defendant Maier is an owner-operator and does not have any employees is legally incorrect.

### (2) Regulatory inspections pursuant to the Mine Act are legal

Defendants argue that MSHA inspectors trespassed when they sought entry to perform safety inspections.[62] Defendants refused MSHA inspectors' access, alleging they needed a warrant before they could legally inspect the mining operation.[63] Defendants rely on *Marshall v. Wait* for the proposition that MSHA must obtain a warrant to conduct mine safety inspections.[64] After *Marshall v. Wait*, the U.S. Supreme Court addressed whether warrantless inspections by MSHA pursuant to the Mine Act violated the Fourth Amendment.[65] In *Donovan v. Dewey*, the Supreme Court "conclude[d] that the general

---

[60] Docket 10 at 2.
[61] *See B.L. Anderson, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 668 F.2d 442, 443 (8th Cir. 1982) (holding that out-of-state resale of mined materials affected commerce); *D.A.S. Sand & Gravel, Inc. v. Chao*, 386 F.3d 460, 464 (2nd Cir. 2004) (holding that "the Mine Act unambiguously expresses Congress's intent to regulate the mining industry to the full extent of its power under the Commerce Clause, and (2) that Congress's power under the Commerce Clause includes the power to regulate mines whose products are sold entirely intrastate.").
[62] Docket 9 at 1.
[63] *Id.*
[64] *Id.*
[65] *Donovan v. Dewey*, 452 U.S. 594, 596 (1981).

*Su v. Alaska Goldmine, et al.* Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction Page 11
Case 4:23-cv-00019-JMK    Document 16    Filed 11/01/23    Page 11 of 20

program of warrantless inspections authorized by § 103(a) of the Act does not violate the Fourth Amendment."[66] Defendants' contention that MSHA must obtain a warrant before inspectors can perform inspections under the Mine Act is legally incorrect.

Defendants also take issue with MSHA's failure to provide evidence of the anonymous complaint.[67] Defendants allege that MSHA's actions are "all based on 'anonymous complaints' for which plaintiff still provides no evidence."[68] Plaintiff counters, explaining, "[t]here is nothing more to the anonymous tip than putting MSHA on notice of a potential covered mine."[69] Defendants' unsolicited additional filing at Docket 15 further argues that a complaint from a disgruntled neighbor does not constitute a safety complaint.

The Mine Act requires inspections "of each surface coal or other mine in its entirety at least two times a year."[70] The Mine Act and MSHA's implementing regulations do not require MSHA to "provide evidence" of a complaint.[71] Once MSHA became aware of Defendants' mining operation,[72] MSHA attempted to comply with its legal obligation to regularly inspect the mine.[73] Whether the complaint is anonymous or lodged by a known person is irrelevant to whether MSHA may inspect Defendants' mining operation.

---

[66] *Id.* at 605.
[67] Docket 9 at 2, 4–6; Docket 10 at 3.
[68] Docket 10 at 3.
[69] Docket 12 at 8.
[70] 30 U.S.C. § 813(a).
[71] *See* 30 U.S.C. § 813 *et seq.*; 29 C.F.R. § 2700.1 *et seq.*
[72] Docket 3 at 2.
[73] 30 U.S.C. § 813(a).

*Su v. Alaska Goldmine, et al.* Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction Page 12
Case 4:23-cv-00019-JMK   Document 16   Filed 11/01/23   Page 12 of 20

### (3) Exhaustion of administrative remedies

Defendants contest the legitimacy of the citations issued by MSHA.[74] As codified at 30 U.S.C. § 815, Congress provided an avenue for mine operators to contest citations and proposed penalty assessments.[75] This statutory scheme articulates the steps for how citations should be noticed, served, and contested.[76] Because Congress established "a detailed structure for reviewing [alleged] violations of 'mandatory health or safety standard, rule, order, or regulation promulgated under the Act,'" a district court does not have jurisdiction over pre-enforcement challenges.[77]

If an operator follows the procedure, they will be afforded an opportunity for a hearing before the Federal Mine Safety and Health Review Commission.[78] If an operator remains aggrieved, they may take their challenge directly to the corresponding court of appeals. Therefore, an operator in Alaska who wishes to contest a citation or order by MSHA must raise a challenge before Federal Mine Safety and Health Review Commission, and if they are adversely affected by an order from the Review Commission may obtain further review from the United States Court of Appeals for the Ninth Circuit.[79] Because Congress set out a specific procedure for operators to challenge citations issued by MSHA,

---

[74] Docket 9 at 5.
[75] 30 U.S.C. § 815.
[76] *Id.* at §§ 815, 823.
[77] *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). In fact, a district court may only have jurisdiction as established at 30 U.S.C. §§ 818(a) and 820(j), "which respectively empower the Secretary [of Labor] to enjoin habitual violations of health and safety standards and to coerce payment of civil penalties. Mine operators do not receive a "corresponding right," but rather must "complain to the Commission and then to the court of appeals." *Thunder Basin Coal Co.*, 510 U.S. at 209.
[78] 30 U.S.C. § 816.
[79] *Id.*

this Court does not have jurisdiction to determine the validity of the citations issued against Defendants.[80] Defendants must avail themselves of the administrative process set by statute in order to challenge their citations.

### III. MOTION FOR PRELIMINARY INJUNCTION

Plaintiff seeks a preliminary injunction enjoining Defendants from denying MSHA entry to the mining operation and prohibiting any miners from entering the mine site until such miners have received required training under the Mine Act.[81] Federal Rule of Civil Procedure 65 governs the issuance of a preliminary injunction. "Every order granting an injunction" must state "the reasons why it issued"; "its terms specifically"; and "describe in reasonable detail . . . the act or acts restrained or required."[82] Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[83]

In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that they are (1) likely to succeed on the merits; (2) likely to suffer irreparable harm in the

---

[80] *Thunder Basin Coal Co.*, 510 U.S. at 207; *see also Am. Coal Co. v. U.S. Dep't of Lab., Mine Safety & Health Admin.*, 639 F.2d 659, 660–61 (10th Cir. 1981) ("A reading of the entire Act, coupled with its legislative history, leads us to conclude that the action taken by Inspector Jones under 30 U.S.C. s 813(k) was subject, first, to administrative review, with final action by the Review Commission to then be subject to judicial review in the appropriate Court of Appeals under 30 U.S.C. § 816. It is on this basis that we conclude that the district court did not have subject matter jurisdiction."); *Marshall v. Gilliam*, 462 F. Supp. 133, 135 (E.D. Mo. 1978) ("This Court has no jurisdiction to consider the legality of any civil assessment against defendant except in an action by the Secretary to collect an assessment under 30 U.S.C. § 820(j).").
[81] Docket 3 at 1.
[82] Fed. R. Civ. P. 65(d)(1).
[83] *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987).

*Su v. Alaska Goldmine, et al.* Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction Page 14
Case 4:23-cv-00019-JMK   Document 16   Filed 11/01/23   Page 14 of 20

absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[84] However, the Ninth Circuit holds that "when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief," Plaintiff does not need to satisfy all of the *Winter* factors.[85]

At 30 U.S.C. § 818(a)(1), the Mine Act explicitly states that:

> The Secretary may institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order in the district court of the United States for the district in which a coal or other mine is located or in which the operator of such mine has his principal office, whenever such operator or his agent--
>
> (A) violates or fails or refuses to comply with any order or decision issued under this chapter, or fails or refuses to comply with any order or decision, including a civil penalty assessment order, that is issued under this chapter,
>
> (B) interferes with, hinders, or delays the Secretary or his authorized representative, or the Secretary of Health and Human Services or his authorized representative, in carrying out the provisions of this chapter,
>
> (C) refuses to admit such representatives to the coal or other mine,
>
> (D) refuses to permit the inspection of the coal or other mine[.]

---

[84] 555 U.S. 7, 20 (2008).
[85] *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983) (directing that due to the plain language of the statute the "standard requirements for equitable relief need not be satisfied").

"The plain language of the statute specifically allows the Secretary to seek an injunction in response to violations of the Mine Act."[86] This Court stands with its sister court and concurs that because Section 818 authorizes "the issuance of an injunction to prevent violations of the Mine Act" the irreparable harm factor is presumed.[87] Accordingly, the Court need only evaluate whether Plaintiff has shown a likelihood of success on the merits, and that the balance of equities and the public interest weigh in Plaintiff's favor.

A.  **Plaintiff is Likely to Succeed on the Merits**

The Mine Act permits a preliminary injunction whenever an operator "violates or fails or refuses to comply with any order or decision issued under [the Mine Act] . . ." or "refuses to admit [MSHA] representatives to the coal or other mine."[88] There is no dispute that Defendants refused to permit MSHA representatives on to the mine site when MSHA attempted to conduct an inspection.[89] Based on the undisputed fact that Defendants refused MSHA entry on to the mine site, which is legally required,[90] Plaintiff has demonstrated it is likely to succeed on the merits with regards to an injunction prohibiting Defendants from refusing future entry.

---

[86] *Solis v. Timber Savers, Inc.*, No. 3:10-CV-547-BLW, 2010 WL 5113066, at *2 (D. Idaho Dec. 3, 2010).
[87] *Id.* (finding that a showing of irreparable harm is not required, and in the alternative, a "refusal to permit inspection—effectively preventing MSHA from enforcing federal safety standards—constitutes an irreparable injury to the Secretary").
[88] 30 U.S.C. § 818(a)(1)(A) & (C).
[89] Docket 9 at 3.
[90] 30 U.S.C. § 813(a) (requiring inspections of "each surface coal or other mine in its entirety at least two times a year").

*Su v. Alaska Goldmine, et al.*      Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction      Page 16
Case 4:23-cv-00019-JMK    Document 16    Filed 11/01/23    Page 16 of 20

Plaintiff also seeks to prohibit entry of any miner on to the mine site until it has completed proper safety training.[91] Plaintiff cites to the MSHA Order which states "[t]he operator is hereby ordered to withdraw all the miners until the miners have received the required training . . ."[92] The Mine Act requires each operator implement a safety training program approved by the Secretary of Labor which includes training for new miners, and continuing training for experienced miners.[93] Defendants articulated that "[a]s owner operators we decline further MSHA training and will not submit a training plan."[94] Because the MSHA Order was issued under the Mine Act, and Defendants have failed/refused to comply, Plaintiff likely will succeed on the merits regarding an injunction preventing miners from entering the mine site without receiving proper training first.

**B.    The Balance of Equities and Public Interest Weigh in Favor of Granting the Preliminary Injunction**

The Court recognizes that MSHA's inspections may reduce the overall productivity of the mining operation during the times when inspections take place. The Court also recognizes that preventing Defendants from entering the mining operation until miners are properly trained could cause Defendants to lose revenue derived from operating the mine. However, the Court does not view this lost productivity or revenue as a significant equitable concern. In passing the Mine Act, Congress explicitly noted "the first priority and concern of all in the coal or other mining industry must be the health and safety

---

[91] Docket 3 at 1.
[92] Docket 3-1 at 8.
[93] 30 U.S.C. § 825(a).
[94] Docket 3-1 at 21.

of its most precious resource—the miner."[95] With health and safety of the miner in mind, Congress found it prudent to require safety trainings and regular inspections.[96] Congress already has weighed the equitable concerns of productivity and safety, concluding that safety is more important.[97]

Plaintiff also notes the public policy within the Alaska mining community weighs in favor of granting the preliminary injunction.[98] Specifically, treating all mine operators equally favors granting the preliminary injunction. Permitting Defendants to continue operating without the same regulatory oversight that other operators experience puts Defendants at an unfair competitive advantage. The balance of equities and the public interest weigh in favor of Plaintiff.

C. Contours of the Preliminary Injunction

Plaintiff seeks a preliminary injunction allowing MSHA safety inspections and prohibiting any miners onto the site until they have received the required training.[99] Plaintiff's request is **GRANTED**. Defendant Sheldon Maier, Janne Maier, Defendant Alaska Goldmine LLC, or any other person, agent, or legal business entity, are enjoined from denying MSHA inspectors' entry to the Pedro Creek Mine site. Furthermore, Defendant Sheldon Maier, Janne Maier, Defendant Alaska Goldmine LLC, or any other

---

[95] 30 U.S.C. § 801.
[96] *Id.* §§ 813, 818.
[97] *Id.* §§ 813, 818.
[98] Docket 3 at 7 ("Additionally, the Alaska local mining community will be harmed because they will be forced to compete with an unregistered and uninspected mine that has the competitive advantage of not factoring into their costs the safety equipment and training that other registered mines require.").
[99] *Id.* at 8.

*Su v. Alaska Goldmine, et al.* Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction Page 18
Case 4:23-cv-00019-JMK   Document 16   Filed 11/01/23   Page 18 of 20

person, agent, or legal business entity are enjoined from conducting mining operations at the mine site, until Defendants have complied with the MSHA Order No. 9615288,[100] including implementation of an MSHA approved training program.

Defendant Sheldon Maier, Janne Maier, or other persons or agents at their direction, are permitted to enter the mine site to winterize equipment, install required safety equipment, and prevent environmental harm to the site and surrounding area; however, mining activities beyond those described in this paragraph are strictly prohibited.

This preliminary injunction will remain in effect until **July 15, 2024**. If Defendants come into compliance with the MSHA Order and submit to MSHA inspections, the parties may jointly request the preliminary injunction may be lifted. Similarly, if Defendants fail to come into compliance with the MSHA Order, or deny MSHA entry moving forward, then Plaintiff may seek to have the preliminary injunction made permanent, and pursue any other relief outlined in Plaintiff's complaint.

## IV. CONCLUSION

Plaintiff's Motion for Preliminary Injunction at Docket 3 is hereby **GRANTED**. The Motion to Deny Expedited Consideration is at Docket 11 is **DENIED AS MOOT**. Defendant Sheldon Maier, Janne Maier, Defendant Alaska Goldmine LLC, or any other person, agent, or legal business entity, are enjoined from denying MSHA Inspectors entry to the Pedro Creek Mine site. Furthermore, Defendant Sheldon Maier, Janne Maier, Defendant Alaska Goldmine LLC, or any other person, agent, or legal

---

[100] Docket 3-1 at 8.

*Su v. Alaska Goldmine, et al.*  Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction  Page 19
Case 4:23-cv-00019-JMK   Document 16   Filed 11/01/23   Page 19 of 20

business entity are enjoined from conducting mining operations at the Pedro Creek Mine site, until Defendants have complied with the MSHA Order including implementation of an MSHA approved training program.

This preliminary injunction will remain in effect until **July 15, 2024**, unless the Court issues a superseding order.

IT IS SO ORDERED this 1st day of November, 2023, at Anchorage, Alaska.

                                         */s/ Joshua M. Kindred*
                                         JOSHUA M. KINDRED
                                         United States District Judge

*Su v. Alaska Goldmine, et al.*  Case No. 4:23-cv-00019-JMK
Order Granting Preliminary Injunction  Page 20
Case 4:23-cv-00019-JMK   Document 16   Filed 11/01/23   Page 20 of 20